IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIO GIBSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-02210-G-BT |
| | § | |
| U.S. BANK TRUST NATIONAL | § | |
| ASSOCIATION, NOT IN ITS | § | |
| INDIVIDUAL CAPACITY BUT | § | |
| SOLELY AS TRUSTEE OF LSF9 | § | |
| MASTER PARTICIPATION TRUST, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is U.S. Bank Trust National Association's Motion for Summary Judgment (ECF No. 30) seeking dismissal with prejudice of Plaintiff's claims and a judgment authorizing foreclosure. For the following reasons, the Court should GRANT the Motion.

**Background**

This case arises out of Plaintiff Antonio Gibson's default on a Texas home equity loan (the "Loan") and Defendant's attempts to foreclose on the property that secures the Loan.

On July 14, 2006, Gibson executed a Texas Home Equity Note (the "Note") made payable to H & R Block Mortgage Corporation and its assigns. *See* MSJ App. Ex. 1-A (ECF No. 32-2). The indebtedness was secured by a Texas Home Equity

Security Instrument (the "DOT"), establishing a first lien on Gibson's home in Cedar Hill, Texas (the "Property"). *See id.* at Ex. 1-B (DOT) (ECF No. 32-3). Through a series of transfers, the Loan was ultimately assigned to Defendant, as Trustee for the LSF9 Master Participation Trust, in December 2016. *See id.* at Ex. 1-D (Assignments) (ECF No. 32-5). Defendant is the current mortgagee for the Loan. *See id.* at Ex. 1, p. 2 (ECF No. 32-1).

Prior to the assignment to Defendant, Gibson experienced financial hardship and entered into two separate loan modification agreements. *See id.* at Ex. 1-E, p. 4 (Jan. 2014 Loan Modification Agreement) (ECF No. 32-6) ("I am experiencing a financial hardship, and as a result (1) I am in default under the Loan Documents or my default is imminent[.]") & Ex. 1-F, p. 1 (Dec. 2015 Loan Modification Agreement) (ECF No. 32-7) ("Borrower is in default for failure to make payments or has demonstrated imminent default under the terms of the Note."); *see also* Pl.'s Resp. Ex. A, ¶ 4 (Gibson's Affidavit) (ECF No. 35-1) ("I had been trying to cure the default of my home equity loan with the prior loan servicer[.]"). But Gibson failed to remain current on his Loan obligations, and, on September 20, 2016, then-loan servicer Caliber Home Loans ("Caliber") sent Gibson a Notice of Default and Intent to Accelerate. MSJ App. Ex. 1-G (Sept. 20, 2016 Letter from Caliber) (ECF No. 32-8) ("[Y]ou are in default under the terms of the documents creating and securing your Loan . . . for failure to pay amounts due."); *see also id.* at Ex. 1-G, p. 73 (USPS Tracking Results) (ECF No. 32-8). According to Defendant, Gibson is currently past due for the January 1, 2017

mortgage payment and all subsequent payments due under the Loan. *See id.* at Ex. 1, p. 2 (ECF No. 32-1).

When Gibson failed to convince the servicer to enter into a forbearance agreement, he filed for bankruptcy. In fact, he filed three times between March 2017 and October 2018. *See* Pl.'s Original Pet. Ex. C (March 2017 Bankruptcy Docket); Ex. D (July 2017 Bankruptcy Docket); Ex. E (February 2018 Bankruptcy Docket) (ECF No. 1-4). On January 22, 2019, after the third bankruptcy case was dismissed, Defendant applied for an Expedited Order of Foreclosure under Texas Rule of Civil Procedure 736. MSJ App. Ex. 1-H (ECF No. 32-9).

Gibson also attempted to pursue loss mitigation. *See* Pl.'s Resp. Ex. A, ¶ 4 (ECF No. 35-1). On February 9, 2021, Caliber mailed Gibson a letter indicating that it received his Loss Mitigation Application (the "Application") and that the Application was "complete." *Id.* at Ex. A-1 (ECF No. 35-2). However, on February 23 and February 25, Caliber informed Gibson that, upon review of his Application, additional documents were required to complete his Application. *Id.* at Ex. A-2 (ECF No. 35-3).

On February 26, Caliber transferred Gibson's Loan to Fay Servicing, LLC for servicing and informed Gibson of the transfer. *Id.* at Ex. A, ¶ 7 (ECF No. 35-1). On March 8, Fay Servicing mailed Gibson a "Welcome Package," *id.* at Ex. A-7 (ECF No. 35-8) and a separate Fair Debt Collections Practices Act (FDCPA) Validation Notice, *id.* at Ex. A-4 (ECF No. 35-5). On March 16, Gibson emailed Caliber the requested documents missing from Gibson's loan modification Application. *Id.* at

Ex. A-3 (ECF No. 35-4). On April 10, Fay Servicing sent a Mortgage Statement to Gibson indicating that he was more than four years delinquent on his Loan and needed to pay almost $200,000 by May 1 to bring his Loan current. *Id.* at Ex. A-5 (ECF No. 35-6).

On April 16, 2021, Gibson spoke with James Palikan, a representative at Fay Servicing, regarding his loss mitigation Application and "material discrepancies in the amount pay due on [his] mortgage." *Id.* at Ex. A, ¶ 11 (ECF No. 35-1). On April 19, Gibson emailed Eddie Galvan, another representative at Fay Servicing, summarizing his phone call with Mr. Palikan, including that Mr. Palikan "confirmed that Fay has my [Application] and the past due discrepancies will be investigated during the modification process." *Id.* at Ex. A-6 (ECF No. 35-7).

On August 2, Gibson received a Notice of Substitute Trustee Sale stating Gibson's home would be sold at a foreclosure auction on September 7, 2021. *Id.* at Ex. A-8, p. 2 (ECF No. 35-9); *see also* Pl.'s Original Pet. ¶ 40 (ECF No. 1-4). Also on August 2, Fay Servicing contacted Gibson informing him that his Application was not complete and was still missing the documents requested by Caliber on February 23 and 25. Pl.'s Resp. Ex. A-7 (ECF No. 35-8). Three days later, Gibson filed a complaint with the Consumer Financial Protection Bureau (CFPB) regarding discrepancies in the FDCPA and his outstanding Application. *Id.* at Ex. A, ¶ 13 (ECF No. 35-1). On August 9, Fay Servicing again contacted Gibson and again advised him that his Application was not complete. *Id.* at Ex. A-7, p. 2 (ECF No. 35-8). During this August 9 conversation, Gibson advised Fay Servicing that

he would send in the missing documents. *Id.* (ECF No. 35-8). According to an email sent by Gibson to S. Bishop at Fay Servicing, Gibson contacted Caliber to confirm that it received the missing documents on March 16, which Caliber confirmed they did. *Id.* at Ex. A-8, p. 2 (ECF No. 35-9). Gibson also asked S. Bishop to authorize Mr. Galvan to review his Application.

On August 20, Fay Servicing sent Gibson a response to his CFPB complaint indicating that there were discrepancies in Gibson's monthly statement, so Fay Servicing requested a hold on the foreclosure sale, and represented Fay Servicing would send an "updated reinstatement quote [by mail] on August 27." *Id.* at Ex. A-7 (ECF No. 35-8). That same day, Gibson emailed Fay Servicing requesting confirmation of the "sale date cancellation" and proposing Fay Servicing move forward with the Application he sent to Caliber or that Gibson restart the Application. *Id.* at Ex. A-8 (ECF No. 35-9).

With the foreclosure sale date fast approaching, Gibson, represented by counsel, initiated this civil action by filing an Original Petition and Application for Temporary Restraining Order and Temporary Injunction in the 191st District Court, Dallas County, Texas, on September 1, 2021. *See* Not. Removal ¶ 1 (ECF No. 1). In his Petition, Gibson seeks exemplary damages and attorney's fees for (i) Defendant's alleged breach of contract and violations of the Texas Debt Collection Act (TDCA) for its failure to provide notice of the default and an opportunity to cure; (ii) common law fraud pertaining to Fay Servicing's "misrepresentations" that Gibson's Application would be approved, which Gibson "relied upon to his

detriment"; and (iii) violations of Regulation X and Z of the Real Estate Settlement Procedures Act (RESPA) for Fay Servicing's failure to review Gibson's Application. *See* Pl.'s Original Pet. (ECF No. 1-4).

Defendant filed its answer in state court and removed this action to federal court asserting both federal question and diversity jurisdiction. Not. Removal ¶ 4 (ECF No. 1). Thereafter, the Court granted Defendant leave to file a counterclaim seeking declaratory relief and entry of a judgment authorizing foreclosure. Countercls. 4 (ECF No. 13). Defendant then filed a Motion for Summary Judgment, which it subsequently withdrew, and Gibson sought leave to file an out-of-time Amended Complaint (ECF No. 22) seeking to add Fay Servicing as a Defendant. The Court, however, denied Gibson's motion due to his failure to establish good cause under Federal Rule of Civil Procedure 16. Order Denying Leave to Amend 3 (ECF No. 28) ("Granting Gibson's request [to file an out-of-time amendment] would reward Gibson for his dalliance and further delay resolution of an already long and procedurally complicated dispute.").[1]

---

[1] Fay Servicing's participation in this lawsuit is not required for a foreclosure by Defendant to be proper. *See U.S. Bank Nat'l Ass'n v. Richardson*, 2019 WL 1115059, at *4 (N.D. Tex. Mar. 11, 2019) ("[C]ourts that have addressed the issue of whether the mortgage servicer was a necessary party have determined that the mortgage servicer was only a nominal party whose presence was not necessary and whose absence would not prevent the courts from entering a final judgment [authorizing foreclosure].") (citing *Powell v. Nationstar Mortg. LLC*, 2017 WL 191261, at *2 (E.D. Tex., Jan. 18, 2017); *Schmelzer v. Nationstar Mortg., LLC*, 2016 WL 4368735, *1 (E.D. Tex. August 16, 2016)); *see also Pittman v. Seterus, Inc.*, 2019 WL 2424078, at *2 (N.D. Tex. May 13, 2019), *rec. adopted*, 2019 WL 2422505 (N.D. Tex. June 6, 2019) (denying motion to add mortgage servicer as defendant under Rule 19).

On May 22 and July 29, 2022, Fay Servicing sent two additional Notices of Default and Intent to Accelerate to Gibson and his attorney. MSJ App. Ex. 1-I (ECF No. 32-10) & Ex. 1-J (ECF No. 32-11).

Later, Defendant refiled its Motion for Summary Judgment seeking a judgment dismissing all of Gibson's claims and a judgment authorizing it to foreclose on the Property. MSJ ¶ 3 (ECF No. 31). With the Court's permission, Gibson filed a late Response to Defendant's Motion (ECF No. 35), and Defendant filed its Reply (ECF No. 36). The Motion is ripe for determination.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means the movant must demonstrate there are no genuine and material

disputes and that it is entitled to summary judgment as a matter of law. *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties must satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)).

The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

I.   <u>Defendant is entitled to summary judgment on Gibson's breach of contract claim.</u>

Gibson claims Defendant breached the DOT by failing to provide notice of default and an opportunity to cure 30 days before accelerating the Loan and posting the Property for foreclosure. *See* Pl.'s Original Pet., ¶¶ 47–48 (ECF No. 1-4). To prevail on his breach of contract claim, Gibson must establish: (1) the existence of a valid contract; (2) that he performed or tendered performance; (3) that Defendant breached the contract; and (4) that he sustained damages as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.—Texarkana 1981, no writ). Among other arguments, Defendant contends that it is entitled to summary judgment on Gibson's breach of contract claim because there is no evidence of damages.

Indeed, Gibson has adduced no evidence that he suffered damages as a result of any alleged breach of the DOT by Defendant. In Texas, there are no damages recoverable under a breach of contract claim in the context of a foreclosure if there is no foreclosure sale and the property owner maintains title and continuous possession of the property. *Robinson et al. v. Wells Fargo Bank N.A.*, 2020 WL 7010043, at *3 (N.D. Tex. Oct. 15, 2020) (Rutherford, J.) (citing *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011)) (holding plaintiff failed to allege damages for breach of contract where

no foreclosure occurred, she remained in continuous possession and occupation, and title remained in her name).

There is no dispute in this case that Defendant never foreclosed on, and Gibson remains in possession of and currently occupies, the Property. *See* MSJ ¶ 67 (ECF No. 31); *see also* Not. Removal Ex. C-3 (Gibson's Unopposed Motion to Dismiss Application and to Vacate Order) (ECF No. 1-6); Not. Removal Ex. C (State Court Docket) (ECF No. 1-3) (demonstrating that the lower court granted Gibson's motion concerning Defendant's Application for expedited foreclosure). Nothing in the record suggests that Gibson has lost title to, or no longer resides at, the Property. Accordingly, Gibson has failed to raise a genuine fact issue as to an essential element of his breach of contract claim under Texas law.

Therefore, the Court should dismiss Gibson's breach of contract claim with prejudice.

II.    <u>Defendant is entitled to summary judgment on Gibson's common law fraud claim.</u>

Gibson alleges that Defendant's agent, Fay Servicing, "specifically told [him] that he would be provided with a loan modification . . . after he had submitted a 'complete' loan modification application, but then wholly failed or refused to ever provide [ ] him with the promised modification, and instead proceeded to accelerate [his] loan and post his homestead property for foreclosure sale." Pl.'s Original Pet., ¶ 51 (ECF No. 1-4). Gibson further alleges that Fay Servicing's statement was false and that he relied on the false statement to his detriment and

incurred damages as a result. *See id.* (ECF No. 1-4). To state a claim for fraud under Texas law, "a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Defendant argues that it is entitled to summary judgment on Gibson's fraud claim on multiple grounds, including the statute of frauds. Gibson fails to directly address this argument in his Response.[2]

Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. Com. Code § 26.02(b). The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *Id.* § 26.02(a)(2). An agreement to modify a loan is subject to the statute of frauds, *see Montvalo v. Bank of Am. Corp.*, 864 F.Supp.2d 567, 582 (W.D. Tex. 2012); and so is an alleged promise to modify a loan, *see Berry v. Federal Nat. Mortg. Ass'n*, 2013 WL 1294008, at *7 (N.D. Tex. Mar. 29, 2013).

---

[2] With respect to his fraud claim, Gibson's Response and the evidence on which he relies more closely align with the allegations in Gibson's proposed amended complaint, which the Court denied him leave to file, than the allegations in his original petition, which are the subject of Defendant's summary judgment motion.

In an affidavit submitted in support of his response to Defendant's summary judgment motion, Gibson states:

> On April 16, 2021, I called Fay and spoke to a representative by the name of James Palikan. I told Mr. Palikan that I had previously submitted a loan modification application and numerous follow up documents to the prior servicer, Caliber, and asked him to confirm whether Fay had received those documents and would be continuing with the review of my loan modification application. I also advised Mr. Palikan that I was disputing the amounts claimed due and owing under the FDCPA notice and the monthly statement that I had received from Fay. He assured me that Fay had received my loan modification application and all of the documentation from Caliber, and that Fay would proceed to review the loan modification application. He also told me that Fay would investigate my dispute of the amounts claimed due and owing as part of its review of the application and then respond to me. On that same day, I sent an email to my assigned account manager, Eddie Galvan, wherein I confirmed to Mr. Galvan what I had discussed with Mr. Palikan on the phone.

Pl.'s Resp. Ex. A, ¶ 11 (ECF No. 35-1); *see also id.* at Ex. A-6 (email to assigned account manager memorializing this conversation) (ECF No. 35-7). But this evidence fails to raise a genuine fact question as to whether Defendant promised to provide Gibson with a loan modification. There also is no evidence that any alleged promise to modify his Loan or to review his loan modification Application was reduced to a writing signed by Defendant or Fay Servicing. Thus, the statute of frauds bars Gibson's fraud claim, and the Court should dismiss it with prejudice. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D. Tex. 2012) (dismissing plaintiff's "claim for breach of a promise to modify" where the promise was barred by the statute of frauds and no exception applied).

III.    <u>Defendant is entitled to summary judgment on Gibson's RESPA claim.</u>

Gibson also contends that Defendant is liable for violating RESPA Regulation X, 12 C.F.R. § 1024.41, because Fay Servicing failed or refused to provide the promised modification and instead proceeded to accelerate the Loan and post the Property for foreclosure.[3] *See* Pl.'s Original Pet. ¶ 51 (ECF No. 1-4). Defendant moves for summary judgment on this claim because Regulation X applies only to mortgage servicers and it was (and is) the actual mortgagee under the Loan—not the mortgage servicer.

RESPA Section 1024.41 outlines loss mitigation procedures for loan servicers. 12 C.F.R. § 1024.41; *Searcy v. Citimortgage, Inc.*, 2015 WL 11120981, at *3 (N.D. Tex. Sept. 16, 2015). It allows a borrower to submit information a servicer requires to evaluate what loss mitigation options are available to the borrower. 12 C.F.R. § 1024.41(b)(1). Once the servicer has received an application, the servicer must promptly review it to determine if the application is "complete"—meaning the application contains all the information needed to make a determination regarding available loss mitigation options—and then notify the borrower of its

---

[3] In his original Petition, Gibson also alleged violations of RESPA Regulation Z, 12 C.F.R. § 1026. *See* Pl.'s Original Pet. ¶ 51 (ECF No. 1-4). In his response, Gibson defends only his claim under Regulation X, therefore abandoning his Regulation Z claims. *See* Pl.'s Resp. ¶¶ 29–41 (ECF No. 35); *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (explaining that when a non-moving party files a response to a motion for summary judgment and fails to include an argument about a claim, defense, or theory that the motion seeks to have the Court dismiss with prejudice, the Court may determine that the nonmoving party has abandoned the unaddressed claim, defense, or theory).

determination. 12 C.F.R. § 1024.41(b)(1), (2). Upon acknowledgment of receipt of a complete application, the servicer must (1) "[e]valuate the borrower for all loss mitigation options available to the borrower" and (2) provide the borrower written notice of any loss mitigation options the servicer will offer. 12 C.F.R. § 1024.41(b), (c). A servicer that has received "a borrower's complete loss mitigation application . . . cannot foreclose before notifying the [borrower] of its loss mitigation ineligibility." *Forscht v. Select Portfolio Servicing, Inc.*, 2018 WL 1757610, at *2 (S.D. Tex. Apr. 12, 2018) (citing 12 C.F.R. § 1024.41(f)(2)(i)). Borrowers may bring suit to enforce these provisions pursuant to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a); *Rentfrow v. JP Morgan Chase Bank, Nat'l Ass'n*, 2020 WL 1893558, at *4 (S.D. Tex. Mar. 25, 2020).

But Section 1204.41 applies only to mortgage servicers and not to mortgagees. *Christiana Trust v. Riddle*, 911 F.3d 799, 804 (5th Cir. 2018) ("By its plain terms, the regulation at issue here imposes duties only on servicers."). Further, to the extent Gibson alleges that Fay Servicing was Defendant's agent, mortgagees cannot be held vicariously liable for alleged RESPA violations of its servicers. *Id.* Therefore, Gibson's RESPA claim fails as a matter of law. Accordingly, the Court should dismiss this claim.

IV.    <u>Defendant is entitled to summary judgment on Gibson's TDCA claims.</u>

Gibson further contends that Defendant is liable for violations of the TDCA—a statute that prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells*

*Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). To prevail on a TDCA claim, a plaintiff must establish (1) the existence of a consumer debt; (2) that the defendant is a debt collector as defined by the TDCA; (3) that the defendant committed a wrongful act in violation of the TDCA; (4) against the plaintiff; and (5) plaintiff suffered injury as a result of the defendant's wrongful act. *Putty v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (citations omitted). The Fifth Circuit has held that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis removed); *see also Starling v. JPMorgan Chase Bank, N.A.*, 2013 WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

Defendant argues that it is entitled to summary judgment because there is no evidence that it violated the TDCA provisions Gibson identifies: "[i] §392.311(a)(7)—threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person 's property without proper court proceedings; [ii] §392.301(a)(8)—threatening to take an action prohibited by law; [iii] §392.304(a)(8)—misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and [iv] §392.304(a)(19)—using any other false

representation or deceptive means to collect a debt or obtain information concerning a consumer." Pl.'s Original Pet ¶ 55 (ECF No. 1-4); *see* MSJ ¶ 58 (ECF No. 31). In response, Gibson defends only his claim under section 392.304(a)(8), thus abandoning his other claims under TDCA. *See Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022).

Section 392.304(a) of the TDCA prohibits a debt collector from using "fraudulent, deceptive, or misleading misrepresentation that employs" certain practices. Tex. Fin. Code § 392.304(a). Among those proscribed practices is "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." *Id.* at § 392.304(a)(8). Here, Gibson points to evidence that Fay Servicing mispresented the amount due on a Monthly Statement. *See* Pl.'s Resp. ¶ 44–45 (ECF No. 35) (quoting *id.* at Ex. A-7 (August 20 Letter from Fay Servicing) (ECF No. 35-8) (stating that after Fay Servicing reviewed Gibson's CFPB complaint alleging that "the balance of arrearages increased by $52,220.06," Fay Servicing identified that "[t]he loan boarded from the prior servicer . . . with incorrect data causing the monthly statement to print with misinformation on it.")).

However, simply misstating the amount of consumer debt is not enough to hold a debt collector liable under § 392.304(a)(8). To prevail, plaintiffs must demonstrate the debt collector made a false or misleading statement that "led [them] to think differently with respect to the character, extent, amount, or status of [their] debt." *Miller,* 726 F.3d at 723. Gibson does not claim that the monthly

statement caused him to think differently with respect to the character, extent, amount, or status of his debt. *See Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 375 (5th Cir. 2021) (holding "the [borrowers] do not allege that they ever believed these letters to be an accurate representation of their debt; they merely claim that the letters overstated the amount past due. The letters did not change the [borrowers'] thinking in any way with respect to their debt; therefore, they cannot serve as the basis for their section 392.304(a)(8) claim."); *Gardner v. Specialized Loan Servicing LLC*, 2023 WL 2718432, at *12 (N.D. Tex. Mar. 8, 2023), *rec. adopted*, 2023 WL 2727548 (N.D. Tex. Mar. 30, 2023) (analyzing Section 392.304(a)(8) and holding that "[p]laintiffs' allegation that SLS at some point added $90,000 to Plaintiffs' balance owed is not enough to survive summary judgment. Plaintiffs again do not claim that this alleged addition caused them to think differently about the amount that they owed. And so, this allegation is not enough to survive summary judgment.").

There is no genuine dispute that Gibson knew that he had a mortgage debt and that he was in default. Further, Gibson does not contend that the Monthly Statement changed his understanding of how much he owed—especially because Gibson filed a CFPB complaint specifically alleging that the transfer amount increased by $52,220.06. Rather, Gibson now claims that he does not know "the amount due and owing to cure the default or the actual correct 'due date.'" Pl.'s Resp. ¶ 46 (ECF No. 35). But this is not the same as causing Gibson to think differently with respect to his debt. *See Gardner*, 2023 WL 2718432 at *12.

Accordingly, Defendant is entitled to summary judgment on Gibson's claim under § 392.304(a)(8).

V.    Gibson is not entitled to injunctive relief.

Under Texas law, injunctive relief is an equitable remedy, not an independent cause of action. *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (Fitzwater, J.) (citing *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). And because Defendant is entitled to summary judgment on all of Gibson's claims and cause of action, Gibson is not entitled to injunctive relief. *See Anderson v. CitiMortgage, Inc.*, 2011 WL 1113494, at *7 (E.D. Tex. March 24, 2011) ("As all of Plaintiffs' causes of action should be dismissed, and Plaintiffs have failed to allege sufficient facts to support their claims, Plaintiffs are not entitled to injunctive relief.").

VI.    Gibson is not entitled to any damages, fees, or costs.

Gibson requested economic, actual, and exemplary damages in addition to attorney's fees. Pl.'s Original Pet. 12–13 (ECF No. 1-4). Because the Court should grant summary judgment in favor of Defendant and dismiss Gibson's claims, the Court should also grant summary judgment on Gibson's claims for damages, other remedies, and fees.

VII.    Defendant is entitled to summary judgment on its counterclaim for an order of foreclosure.

Finally, Defendant seeks summary judgment on its counterclaim for an order authorizing it to foreclose on the Property. The Texas Constitution requires

a party to secure a court order to foreclose on a lien created by a home equity loan. *See* Tex. Const. art. XVI, § 50(a)(6)(D). Pursuant to Rule 735(2) of the Texas Rules of Civil Procedure, a party seeking to foreclose a lien created by a home equity loan may do so by, among other things, filing "a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Texas Property Code § 51.002." Tex. R. Civ. P. 735(2). Section 51.002 of the Texas Property Code expressly permits the sale of real property pursuant to a deed of trust or other security instrument containing a power of sale provided that the party seeking to foreclose establishes that: (1) a debt exists; (2) the debt is secured by a lien created under Tex. Const. art. XVI, § 50(a)(6); (3) the plaintiff has defaulted under the note and security instrument; and (4) notices of default and acceleration have been provided to the plaintiff. *See Huston v. U.S. Bank Nat'l Assoc.*, 988 F. Supp.2d 732, 740 (S.D. Tex. Dec. 19, 2013) (citing Tex. Prop. Code § 51.002), *aff'd*, 583 F. App'x 306 (5th Cir. 2014).

In this case, the summary judgment evidence establishes that Gibson executed the Note—a Texas Home Equity Note—and the DOT—a Texas Home Equity Security Instrument—establishing a first lien on Gibson's home in Cedar Hill, Texas. *See* MSJ App. Ex. 1-A (ECF No. 32-2); Ex. 1-B (ECF No. 32-3). Through a series of transfers, the Note and DOT were assigned to Defendant, *see id.* at Ex. 1-D (ECF No. 32-5), and Defendant is the current holder of the Note, *see id.* at Ex. 1, p. 2 (ECF No. 32-1). The Note provides that in the event of a default in the payment of any installment, the holder of the Note may elect to accelerate the debt,

*id.* at Ex. 1-A (ECF No. 32-2), and the DOT states that the holder of the Note is entitled to accelerate the balance due upon the breach of any of the DOT's provisions and foreclose its security interest in the Property, *see id.* at Ex. 1-B (DOT) (ECF No. 32-3). Gibson defaulted under the terms of the Note by failing to make required payments when due. Pl.'s Resp. Ex. A-7 (ECF No. 35-8). And Gibson failed to cure the default, thereby triggering Defendant's right to declare a default and accelerate the debt. As of September 28, 2022, the amount owed on the Note was $587,582.25. MSJ App. Ex. 1, ¶ 15 (ECF No. 32-1).

Defendant provided Gibson with a Notice of Default and Intent to Accelerate in accordance with Texas law and the terms of the DOT on September 20, 2016 and again on May 25, 2022—during this litigation. *See id.* at Ex. 1-G (September 20, 2016 Notice) (ECF No. 32-8); Ex. 1-I (May 25, 2022 Notice) (ECF No. 32-10). Defendant accelerated the payment obligations under the Loan by filing the Application for an Expedited Order Under Rule 736 on January 22, 2019 and again by filing Defendant's Counterclaims in this action seeking judgment authorizing foreclosure. *See id.* at Ex. 1-H (ECF No. 32-9); Countercls. 4 (ECF No. 13); *see also Alcala v. Deutsche Bank Nat'l Tr. Co. for Long Beach Mortg. Loan Tr. 2006-5,* 684 F. App'x 436, 438–39 (5th Cir. 2017) (citing *Burney v. Citigroup Glob. Mkts. Realty Corp.,* 244 S.W.3d 900, 903–04 (Tex. App.–Dallas 2008, no pet.) (holding that after the requisite notice of intent is provided, notice of acceleration may take the form of the filing of an action for foreclosure). Additionally, Defendant also

sent Gibson and his counsel another Notice of Acceleration on July 29, 2022. MSJ App. Ex. 1-J (ECF No. 32-11).

Based on this evidence, Defendant is entitled to an order authorizing it to foreclose on the Property in accordance with the DOT and Texas Property Code § 51.002. *See Thomas v. Ocwen Loan Servicing, LLC*, 2013 WL 30653, at *5 (N.D. Tex. Jan. 3, 2013) (granting summary judgment on counterclaim for order authorizing foreclosure on similar facts).

Gibson disputes that Defendant is entitled to an order authorizing foreclosure, and he relies on his affidavit to create a fact question as to whether Defendant complied with all prerequisites to foreclosure, specifically the requirement that Defendant provide Gibson with notices of default and acceleration. Gibson points to his affidavit which states that "Fay confirmed to [Gibson] that the information contained in the FDCPA notice and the first monthly statement it provided to [Gibson] in April 2021 was inaccurate and erroneous. Fay further promised [Gibson] that it would correct the information and provide [Gibson] with an accurate reinstatement quote and cancel the pending foreclosure sale, none of which occurred." Pl.'s Resp. Ex. A, ¶ 14 (ECF No. 35-1). Gibson argues that no foreclosure can occur until Defendant provides him with "an accurate and correct accounting of the reinstatement actually due and owing, with all lawful credit and offsets included, and specify the exact date of default." *Id*. at ¶ 16 (ECF No. 35-1).

Although Gibson takes issue with inaccuracies contained in the FDCPA notice that was provided to him in 2021, he points to no evidence that would raise a fact issue as to the legal sufficiency of the 2016 or 2022 notices of default and intent to accelerate, *see* MSJ App. Ex. 1-G (September 20, 2016 Notice) (ECF No. 32-8); Ex. 1-I (May 25, 2022 Notice) (ECF No. 32-10), or the subsequent 2022 notice of acceleration, *see id*. at Ex. 1-J (July 29, 2022 Notice) (ECF No. 32-11). Nor does Gibson cite any authority to support the argument that the notices required under Texas law must contain "an accurate and correct accounting of the reinstatement actually due and owing, with all lawful credit and offsets included, and . . . the exact date of default." Indeed, courts in this district and the state of Texas routinely find that there is no requirement that the required pre-foreclosure notices set forth the exact amount needed to cure the default. *Rhodes v. Wells Fargo Bank, N.A*., 2012 WL 5363424, at *19 (N.D. Tex. Oct. 31, 2012) (finding § 51.002(d) contains no requirement that a notice of default state the amount of money needed to cure the default); *Rabe v. Wells Fargo Bank, N.A*., 2013 WL 5458068, at *7 (E.D. Tex. Sept. 30, 2013) (holding that summary judgment was appropriate because "[t]here is no applicable statute or regulation that requires a notice of acceleration to state the amount necessary to cure the default."); *Buchanan v. Compass Bank*, 2015 WL 222143, at *3 (Tex. App.—Fort Worth Jan. 15, 2015, pet. denied) (affirming summary judgment against borrower and noting there is "no language in the statute that requires notices to include the exact amount owed.").

Section 51.002 of the Texas Property Code contains two notice provisions. Section 51.002(d) requires that the debtor be informed that he is in default and given at least 20 days to cure the default; and Section 51.002(b) requires that notice of acceleration be given at least 21 days before the foreclosure sale. Tex. Prop. Code § 51.002. Defendant's notices complied with these minimum requirements.

Because the evidence establishes Defendant's right to an order authorizing foreclosure of the Property, the Court should grant summary judgment on its counterclaim.

### Recommendation

For the reasons stated, the Court should GRANT Defendant's Motion for Summary Judgment (ECF No. 30), dismiss Gibson's claims with prejudice, and enter a judgment permitting foreclosure on the Property.

**SO RECOMMENDED.**

August 31, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).